**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| IMPLICIT, LLC | |
| Plaintiff, | |
| vs. | Case No. 2:19-cv-39-JRG-RSP |
| FORTINET, INC., | |
| Defendant. | |

**DEFENDANT FORTINET, INC.'S MOTION TO TRANSFER
TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................................... 2

    A.    This Action is in the Beginning Stages ....................................................... 2

    B.    Fortinet Has Strong Connections to the Northern District of California ............. 3

    C.    Plaintiff Has Minimal Connections to E.D. Tex. ......................................... 4

    D.    The Northern District of California is More Convenient for Non-Parties ........... 6

    E.    The Court's Prior Orders Denying Transfer ............................................... 7

III.  LEGAL STANDARD .............................................................................................. 7

IV.   ARGUMENT ........................................................................................................... 8

    A.    Plaintiff Could Have Brought This Case in N.D. Cal. .................................. 8

    B.    The "Private Factors" Weigh in Favor of Transfer ...................................... 8

        1.    Ease of Access to Sources of Proof:  Weighs in Favor of
              Transfer .......................................................................................... 8

        2.    Cost of Attendance for Willing Witnesses:  Weighs in Favor of
              Transfer ........................................................................................ 10

        3.    The Availability of Compulsory Process to Secure Attendance of
              Witnesses: Weighs in Favor of Transfer .................................... 12

        4.    The Remaining Private Interest Factor is Neutral ...................... 13

    C.    The "Public Factors" Weigh in Favor of Transfer ..................................... 14

        1.    Administrative Difficulties Flowing from Court Congestion:
              Neutral .......................................................................................... 14

        2.    Local Interests:  Weigh in Favor of Transfer ............................. 15

        3.    Remaining Considerations:  Neutral ........................................... 15

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Affinity Labs of Tex., LLC v. Apple, Inc.*, No. 9:09-cv-47-RC, Order ......................................... 9

*Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761 (E.D. Tex. 2009) ........................................... 8

*GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-CV-572, 2013 WL 890484
    (E.D. Tex. Jan. 14, 2013) ......................................................................................... 14

*Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673 (E.D. Tex. 2001) ................................................... 7

*In re Apple, Inc.*, 581 F. App'x 886 (Fed. Cir. 2014) ............................................................... 12

*In re Eli Lilly & Co.*, 541 F. App'x 993 (Fed. Cir. 2013) .......................................................... 14

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ................................................... 8, 10, 15

*In re Hoffman-La Roche, Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ............................................... 12

*In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011) ......................................................... 9-11

*In re Verizon Bus. Network Serv. Inc.*, 635 F.3d 559 (Fed. Cir. 2011) ...................................... 13

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc) ............................ 7-8, 14

*In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) ................................................... 11

*Implicit LLC v. F5 Networks, Inc.*, Case No. 3:14-cv-02856-SI, Dkt. 1 ............................... 13-14

*Implicit LLC v. Netscout*, Case No. 2:18-cv-53-JRG ................................................................ 13

*Implicit Networks, Inc. v. F5 Networks, Inc.*, Case No. 3:10-cv-03365-SI,
    Dkt. No. 31 ......................................................................................................... 13-14

*Implicit Networks, Inc. v. IBM*, Case No. 2:08-cv-01080-RAJ, Dkt. 79
    (W.D. Wash. Feb. 26, 2009) (Ex. 5) ................................................................... 5, 9-10

*Implicit v. PAN*, No. 6:17-cv-336 ............................................................................................. 7

*Implicit v. Trend Micro*, No. 6:16-cv-80 ................................................................................... 7

*Implicit, LLC v. Juniper Networks, Inc.*, No. 2:19-cv-37-JRG ................................................... 7

*Kroy IP Holdings, LLC v. Starbucks Corp.*, 2014 WL 5343168
    (E.D. Tex. Sept. 30, 2014) ....................................................................................... 14

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*,
   No. 2:10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ..................................... 3

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) .............................................................................. 7

**Statutes**

28 U.S.C. § 1400(b) ..................................................................................................................... 8

28 U.S.C. § 1404(a) ........................................................................................................... 2, 7, 10

## I.   <u>INTRODUCTION</u>

This case should be transferred to the Northern District of California—where nearly all relevant witnesses, documents, and electronically stored information are located; where a third party (Intel) who entered into a license agreement with Plaintiff that gives rise to a substantial license defense resides; and where the court likewise has experience with Plaintiff's claims on one of these patent families.

The Northern District of California is Defendant Fortinet, Inc.'s home.  Fortinet was founded in northern California in 2000, and its headquarters are in Sunnyvale.  The accused products in this case (certain of Fortinet's FortiGate products) were designed and developed in the Northern District of California.  The majority of Fortinet's U.S. employees devoted to engineering, finance, operations, manufacturing, and marketing, including all of the decisionmakers related to the accused products, work in Sunnyvale or nearby in Union City.  In addition, the vast majority of Fortinet's documents, including documents relating to the development and commercialization of the accused products, and the source code for the accused products, is stored on servers and computers in the N.D. Cal.  By contrast, Fortinet only has a single sales office in Texas (in Plano); no product development, source code, nor technical work relating to the accused products is located there.  As such, this venue has no meaningful connection to the witnesses and products relevant to this case, and Fortinet's minimal connections do not merit keeping this case here, nor do they undermine the substantial convenience of litigating this dispute in California, rather than Texas.

Further, Plaintiff Implicit, LLC ("Plaintiff") has at best a tenuous and patent-litigation-only connection to the Eastern District of Texas.  The predecessor to the Plaintiff—Implicit Networks, Inc.—was originally formed in February 1996 as a Washington corporation with a principal place of business in Seattle.  Likewise, the Plaintiff was originally formed in October

2013, the same date as it acquired the Patents-in-Suit, as a Washington company with a principal place of business in Seattle.  Starting in 2008, Implicit Networks, Inc., and then later Plaintiff, ran its patent litigation business from Seattle, Washington (including filing or transferring 11 lawsuits against 20 different companies in the N.D. Cal. between 2009 and 2014) until March 2017 when the Plaintiff first identified its principal place of business as being in Austin, Texas, in complaints filed in this District and the District of Delaware.  Since October 2018, Plaintiff has purportedly had a principal place of business in Tyler, Texas, but its mailing address is still in the State of Washington.  Thus, Plaintiff's nascent Tyler connection should not anchor the case to this District.

Finally, Plaintiff entered into a license agreement with Intel that licenses any products that use an Intel chip to perform certain functionality, which sweeps in a substantial portion of the accused products.  Intel is located in the Northern District of California.

Given these facts, Fortinet respectfully moves to transfer this case under 28 U.S.C. § 1404(a) to the Northern District of California as it is clearly the more convenient forum.

## II.   STATEMENT OF FACTS

### A.   This Action is in the Beginning Stages

Plaintiff filed its Complaint against Fortinet on February 4, 2019 (Dkt. No. 1), and its first amended complaint on March 19, 2019 (Dkt. No. 15).  Plaintiff alleges that it is the owner of U.S. Patent Nos. 8,056,075 (the "'075 Patent"); 8,856,779 (the "'779 Patent"); 9,325,740 (the "'740 Patent"); 8,694,683 (the "'683 Patent"); 9,270,790 (the "'790 Patent"); 9,591,104 (the "'104 Patent"); 10,027,780 (the "'780 Patent"); 10,033,839 (the "'839 Patent"); and 10,225,378 (the "'378 Patent") (collectively the "Patents-in-Suit").  (Dkt. No. 15 at ¶¶ 9-35).  Plaintiff alleges that Fortinet infringes the Patents-in-Suit with "certain products (the 'Accused Products'), including but not limited to FortiGate next-generation firewalls."  *Id.* at ¶ 36.

As of the filing of this motion, this case is still in its early phases, and no major activities have taken place yet.  Indeed, Fortinet just recently served its answer (Dkt. No. 17).

### B.    Fortinet Has Strong Connections to the Northern District of California

Founded in 2000, Fortinet's principal place of business and headquarters are in Sunnyvale, California.  (Cooper Decl. ¶ 5).  The majority of Fortinet's U.S. employees devoted to engineering, finance, operations, manufacturing, and marketing work in the N.D. Cal.  *Id.* at ¶ 6; *see also Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224-JRG, 2012 WL 194382, at *6 (E.D. Tex. Jan. 23, 2012) ("[N]early all of . . . Fortinet's . . . management and technical witnesses reside in the Northern District of California, where the company[y] [is] headquartered.").  Similarly, the majority of Fortinet's U.S. employees who research, design, and develop products work in Sunnyvale or less than 25 miles away in Union City.  (Cooper Decl. ¶ 7).  Fortinet is not aware of a single employee with relevant, unique testimony for this case located in Texas.  *Id.* ¶ 9.  Thus, numerous Fortinet employees with knowledge of the accused FortiGate system products—including the employees who designed, developed, commercialized, and marketed the accused products—work at Fortinet's Sunnyvale headquarters or its campus in Union City.  *Id.* ¶ 9.  Fortinet's senior management, including all decision-makers related to the accused products, is also in Sunnyvale.  *Id*. at ¶ 7.

Also, a vast majority of the accused FortiGate products use an Intel processor, as well as network processors and content processors designed by Fortinet in N.D. Cal.  *Id.* ¶ 10.  Intel is headquartered in Santa Clara, California (less than five miles away from Fortinet's headquarters).  (Ex. ¶ 1; Cooper Decl. ¶ 10).  Intel has a license to at least some of the Patents-in-Suit from Plaintiff via a settlement agreement.  (Trend Micro's Trial Ex. List (Case No. 6:16-cv-80, Dkt. No. 248-6 at 18); Palo Alto Networks' Mtn for Leave to File Am. Answer & Ctrclm. (Redacted) (Case No. 6:17-cv-182, Dkt. No. 132); Juniper's Mtn. to Transfer, at 3, 9 (Case No.

2:19-cv-39-JRG, Dkt. No. 18)).  The remaining FortiGate products use a "system on a chip" designed by Fortinet in the N.D. Cal.  (Cooper Decl. ¶ 10).  The FortiGate products all use FortiOS as the operating system, which is also a product Fortinet's employees in the N.D. Cal. develop.  (*Id.* at ¶ 11).

Similarly, a large volume of the documents that relate to the design, development, commercialization, and marketing of the accused products, as well as all source code that provides the features accused of infringement in this case, are located in or near Sunnyvale in the N.D. Cal.  (*Id.* at ¶ 12).  Additional documents are located in Vancouver, British Columbia, Canada, and thus are closer to the N.D. Cal. than to the E.D. Tex.  *Id.*

By contrast, Fortinet only has a single sales office in Texas (in Plano), and no product development, source code, nor technical work relating to the accused products, is located there. (Cooper Decl. ¶¶ 9, 13).

### C.      Plaintiff Has Minimal Connections to E.D. Tex.

Plaintiff alleges that it is a Washington limited liability company, with a primary place of business in Tyler, Texas.  (Dkt. No. 15 at ¶ 2).  However, according to Plaintiff's filings with the State of Washington and the U.S. Patent and Trademark Office ("USPTO"), Plaintiff's principal place of business from its inception—and acquisition of the Patents-in-Suit from its predecessor (Implicit Networks, Inc. ("Implicit"), a Washington corporation)—on October 18, 2013 was in Seattle, Washington.  (Ex. 2).  The signatory on the USPTO assignment document for both Plaintiff (as Manager) and Implicit (as President) was the named inventor of the Patents-in-Suit (Edward Balassanian), who resided in Seattle.  (Ex. 3; Ex. 1 - 8 to Dkt. No. 15).  And, according to its filings with the State of Washington, Implicit's principal place of business from its inception in 1996 and until its dissolution in 2014 was also in Seattle.  (Ex. 4).

In 2008, Implicit filed its first two patent infringement lawsuits, including a lawsuit filed

in W.D. Wash. against Adobe, IBM, Oracle, and SAP in which *Implicit* (with three of the

defendants) *filed* a Motion to Transfer the case to N.D. Cal. (Ex. 5).  Indeed, in the Motion to

Transfer to N.D. Cal., Implicit argued:

> In the current posture, the Northern District of California best serves the convenience of
> the parties and witnesses.  All of the defendants in the instant case have either their
> primary places of business or substantial operations in the Northern District of California.
> Likewise, Sun, the plaintiff in the Northern District of California declaratory relief action,
> is headquartered in that district. And, while Implicit has its office in Seattle, one of its
> litigation counsel (added by Implicit subsequent to its filing suit in this District) is located
> in San Francisco.[1] Oracle, the only party that does not join in this motion, will have
> difficulty arguing that the Northern District of California is an inconvenient venue.
> Oracle's own corporate headquarters and principal place of business are located in the
> Northern District of California. Indeed, Oracle has filed more than 30 lawsuits in the
> Northern District of California in the last 10 years.
>
> \*      \*      \*      \*      \*      \*      \*      \*      \*      \*
>
> The Northern District of California is clearly the most convenient venue for the
> defendants in this case plus Sun. As described above, all of these companies have their
> corporate headquarters or other substantial operations in that District. For this reason, a
> large proportion of the relevant witnesses and documents will be located in the Northern
> District of California. In patent infringement actions, the location of the alleged infringer,
> i.e., "the milieu of the [accused] device and the hub of activity centered around its
> production" favors venue in that district.

*Implicit Networks, Inc. v. IBM*, Case No. 2:08-cv-01080-RAJ, Dkt. 79 (W.D. Wash. Feb. 26,

2009) (internal citations omitted) (Ex. 5).  As a result of Implicit's Motion, the Court transferred

the case to N.D. Cal.  *IBM*, Dkt. 85 (W.D. Wash. Mar. 19, 2009).  In addition to the IBM Case,

between 2009 and 2014, Implicit and Plaintiff filed 10 additional lawsuits against 16 additional

companies in the N.D. Cal.  (Ex. 6).

Plaintiff continued to identify its principal place of business as Seattle (including in *new*

lawsuits filed in this District) until March 2017, when it first identified its principal place of

business as being in Austin, Texas (W.D. Tex.) in complaints filed in this District and D. Del.

---

[1] The same litigation counsel also represents Plaintiff in the instant case against Fortinet.
*Compare* Ex. 8 *with* Ex. 9.

(Ex. 7).  According to Plaintiff's recent filings with the State of Washington, as of October 2018, Plaintiff's street address is a shared workspace in Tyler, Texas (Ex. 15), but Plaintiff maintains its mailing address in Washington.  (Ex. 10).  Moreover, the Texas Secretary of State identifies the same Washington address as Plaintiff's mailing address, as does the Texas Office of the Comptroller, which also identifies Mr. Balassanian as the owner at the Washington address.  (Ex. 11).  Consistent with this, according to the faces of the Patents-in-Suit, Mr. Balassanian has resided in Seattle and more recently in Austin in W.D. Tex.  (Dkt. No. 15, Exs. 1-9).  Fortinet understands that Plaintiff has no employees and no activities other than the enforcement of its patents (such that there is no non-litigation reason for it to move documents from Washington to Texas).  *See* Ex. 16 (identifying only Mr. Balassanian as willing witness).  Even taking into account litigation-based reasons for document transfers, Plaintiff's prosecution counsel and documents are not in this District either—they are in Austin.  (Ex. 17).

### D.        The Northern District of California is More Convenient for Non-Parties

Although this case is in its early stages, Fortinet believes there are non-party witnesses important to the claims and defenses in this case who reside in or near the N.D. Cal.  As discussed, *infra*, Implicit has executed a "Patent License Agreement" with Intel.  *See* Trend Micro's Trial Exhibit List (Dk. No. 248-6 at 18); Palo Alto Networks' ("PAN") Mtn. for Leave to File Am. Answer & Ctrclm. (Redacted) (Dkt. No. 132); Juniper's Mtn. to Transfer, at 3, 9 (Case No. 2:19-cv-39-JRG, Dkt. No. 18).  The Intel Agreement applies to the "Demux Patents," which are also at issue in Fortinet's case (PAN's Mtn. (Redacted) (Dkt. No. 132)) and, as in PAN's case (Dkt. No. 132), the FortiGate products use Intel processors.  (Cooper ¶ 10).  Implicit has previously stated that it would need at least a deposition of and documents from Intel to litigate a license defense based on the Intel agreement. *See* Implicit Opp. to PAN's Mtn, at 12 (Redacted) (Dkt. No. 130).  Intel is headquartered in Santa Clara, California in the N.D. Cal.  (Ex. 1).

- 6 -

Finally, in *Implicit, LLC v. Juniper Networks, Inc.*, No. 2:19-cv-37-JRG, Juniper has also filed a motion to transfer to N.D. Cal., and Juniper's motion highlights the extensive experience N.D. Cal. has with some of the Patents-in-Suit.  Juniper's Mtn. to Transfer (No. 2:19-cv-39-JRG, Dkt. No. 18).  Thus, there is a related case in this District with a pending transfer motion discussing prior litigation on the same products and same parties also in N.D. Cal.

### E.     The Court's Prior Orders Denying Transfer

In the meet-and-confer, Plaintiff noted that the Court has denied at least two prior transfer motions relating to claims brought by Implicit.  (Order [Dkt. No. 38], *Implicit v. PAN*, No. 6:17-cv-336); Order [Dkt. No. 77], *Implicit v. Trend Micro*, No. 6:16-cv-80).  As described below, Fortinet submits that the facts here present a more compelling case for transfer given that there are stronger ties to California because of Fortinet's documents and witnesses, discovery related to the Intel agreement, and the Juniper motion based upon prior litigation in N.D. Cal. with the same products, patents, and parties.  Additionally, the complete record relating to Implicit's and Plaintiff's continuing Washington address since 1996 and the details of Implicit's prior successful motion to transfer from W.D. Wash. to N.D. Cal. was not before the Court previously.

## III.   LEGAL STANDARD

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a).  This prevents "waste of time, energy and money and . . . protect[s] litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately, "[i]t is within the sound discretion of the court to decide to transfer venue."  *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001).  But a court "must exercise its discretion in light of the particular circumstances of the case."  *Id.* There is "good cause" to transfer when the transferee venue is clearly more convenient.  *In re*

*Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).  The convenience analysis focuses on a series of private and public factors addressed in detail below.

## IV.   ARGUMENT

### A.   Plaintiff Could Have Brought This Case in N.D. Cal.

A threshold question is whether the case could have been brought in the transferee forum. Venue is proper in the N.D. Cal. because Fortinet maintains its headquarters (*i.e.*, "a regular and established place of business") there and sells the accused FortiGate system products (*i.e.*, alleged "acts of infringement") there.   Accordingly, just like the IBM Case and the ten subsequent cases filed by Implicit and Plaintiff in the N.D. Cal., Plaintiff's infringement claims could have been brought in and may be transferred to the N.D. Cal.  *See* 28 U.S.C. § 1400(b).

### B.   The "Private Factors" Weigh in Favor of Transfer

Next, the Court considers the so-called private interest factors, which include:  (1) the relative ease of access to sources of proof; (2) the cost of attendance for willing witnesses; (3) the availability of compulsory process to secure witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *Volkswagen*, 545 F.3d at 315.

#### 1.   Ease of Access to Sources of Proof:  Weighs in Favor of Transfer

This factor "turn[s] upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues."  *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009).  This is true even "in the era of electronic storage and transmission."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345-46 (Fed. Cir. 2009).  Generally, in "patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Id.*

Here, the bulk of the evidence relevant to this case is located in the N.D. Cal.  *See IBM*

*Case*, No. 2:08-cv-01080-RAJ, Dkt. No. 79 ("The Northern District of California is clearly the most convenient venue for the defendants in this case plus Sun. As described above, all of these companies have their corporate headquarters or other substantial operations in that District. For this reason, a large proportion of the relevant witnesses and documents will be located in the Northern District of California."). As in *IBM*, a large volume of Fortinet's documents relating to the design, development, commercialization, and marketing of the accused FortiGate system products are in Sunnyvale, California. *See* Section II.B. So is the relevant Fortinet source code, and additional documents are located in Vancouver. *Id.* Also, Fortinet's single sales office in Plano, Texas does not change the analysis—no product development, source code, nor technical work relating to FortiGate is located there. *Id. See also Affinity Labs of Tex., LLC v. Apple, Inc.*, No. 9:09-cv-47-RC, Order [Dkt. No. 30] at 6 (Aug. 25. 2009) (factor supported transfer where Apple's documents were in N.D. Cal., and plaintiff's documents were in W.D. Tex.) (Ex. 12).

Conversely, to the extent Plaintiff may contend that it moved its documents to Austin or Tyler, any such movement of documents was solely for litigation. "The Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation." *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011). Here, Plaintiff has no business activities other than litigation. Specifically, Plaintiff is organized under the laws of the State of Washington, and it and the predecessor Implicit entity have consistently maintained a mailing address there. Section II.C. Plaintiff has identified in this District only a shared workspace as its principal place of business. *Id.* Also, Plaintiff's principal (and former Implicit president), Edward Balassanian, is not in this District. *Id.* According to the Texas Public Information Report, Mr. Balassanian is Plaintiff's owner at an address in the State of Washington. *Id.* Thus, Plaintiff's alleged address in this District is cloudy at best, and

regardless, the establishment of that address and any transfer of documents were necessarily in anticipation of litigation, because Plaintiff has no activities other than the enforcement of its patents.  *See Microsoft*, 630 F.3d at 1365 (transfer of documents to company's offices in anticipation of litigation supported finding that venue was manipulated in § 1404(a) analysis). Rather, Plaintiff's documents are properly attributed to Washington, the state in which it and Implicit have repeatedly and consistently had a mailing address since 1996.  *See* Section II.C.

Further, Implicit previously transferred the IBM Case to the N.D. Cal., for reasons similar to those raised by Fortinet, and between 2009 and 2014, Implicit and Plaintiff litigated ten additional lawsuits against sixteen companies in the N.D. Cal.  *See* Section II.C.  Thus, Plaintiff cannot claim to be inconvenienced by N.D. Cal., and it will have already determined how to transport its documents there.  This factor favors transfer.

2.     Cost of Attendance for Willing Witnesses:  Weighs in Favor of Transfer

The convenience and cost of witness attendance is "the single most important factor in the transfer analysis."  *Genentech*, 566 F.3d at 1343.  This factor is analyzed in view of the Fifth Circuit's "100-mile" rule, which provides that when the proposed venue is more than 100 miles from the transferor court, witness inconvenience increases in direct relationship to the additional distance to be traveled.  *Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004).  Here, none of the parties or their witnesses is in this District; Fortinet and the majority of the relevant witnesses are in the N.D. Cal.

Again, as in *IBM*, the Fortinet employees with knowledge regarding FortiGate— including the employees who designed, developed, commercialized, and marketed these products—work at Fortinet's Sunnyvale headquarters.  *See* Section II.B.  There is not a single Fortinet employee with relevant, unique testimony for this case located in Texas.  *Id.*  Also, the disruption to Fortinet's business activities should its employees appear for trial, hearings, or

other proceedings will be significantly increased if they have to travel to E.D. Tex.  (Cooper Decl. ¶ 14).  Thus, unless this matter is transferred, Fortinet's relevant witnesses and corporate representatives will be forced to travel ~1,800 miles from California to Texas.

As for Plaintiff, Fortinet is not aware of *any* fact witnesses in E.D. Tex. who have information relevant to the issues in this case.  Implicit and Plaintiff identify as Washington companies, and only in 2017, did Plaintiff claim its principal place of business was no longer in Seattle, but a shared workspace in Austin (in W.D. Tex.).  *See* Section II.C.  Plaintiff's purported presence in Tyler is even more recent—October 2018—and Implicit and Plaintiff have consistently identified a mailing address in the state of Washington since 1996.  *Id.*  Further, Plaintiff does not have any employees at its principal place of business.  Section II.C; *see Microsoft*, 630 F.3d at 1365 (plaintiff manipulated venue when it transferred documents to office in E.D. Tex., had no employees there, and was a construct for litigation).

At best, Plaintiff could argue that Mr. Balassanian (its owner and the named inventor of the Patents-in-Suit) lives in Austin, Texas.  *See* Dkt. No. 15 at Ex. 9.  But Austin is not in this District.  Moreover, the presence of a single willing witness in W.D. Tex. cannot overcome the breadth of Fortinet's witnesses in N.D. Cal.  *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *DSS Tech.*, 2014 WL 6847569, at *3 ("ephemeral contacts [plaintiff] has with the EDTX do not merit consideration of the convenience of the witnesses [it] identified").

In addition, Implicit's and Plaintiff's significant litigation history show that Plaintiff is certainly able to litigate cases in the N.D. Cal., including cases asserting many of the Patents-in-Suit.  *See* Section II.C; Juniper Mtn. to Transfer at 1-6 (Dkt. No. 18).  Indeed, Plaintiff has retained the same California counsel as Implicit to conduct this litigation, so transfer to the N.D. Cal. is convenient.  (Dkt. Nos. 2-3).  This factor thus weighs in favor of transfer.

3.     The Availability of Compulsory Process to Secure Attendance of Witnesses: Weighs in Favor of Transfer

For this factor, the Court evaluates the subpoena power over non-party witnesses. *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009) (district court should have weighed another venue's absolute subpoena power over non-party witness to favor transfer); *In re Apple, Inc.*, 581 F. App'x 886 (Fed. Cir. 2014) (factor "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue").

Non-party witnesses important to the claims and defenses in this case reside in or near, and most are subject to compulsory process by, the N.D. Cal.  For example, Implicit executed a "Patent License Agreement" with Intel.  *See* Section II.D.  The Intel Agreement applies to the "Demux Patents," which are also at issue in this case, and in fact, the majority of the accused FortiGate products use Intel processors and memories.  *Id.*  Implicit has previously stated that it would need at least a deposition of and documents from Intel to properly respond to a license defense based upon the Intel agreement.  *See* Implicit Opp. to PAN's Mtn for Leave to File Am. Answer & Ctrclm., at 12 (Redacted) (Dkt. No. 130).  Intel is headquartered in Santa Clara, California, (Section II.D.), and thus, the N.D. Cal. has subpoena power.

Conversely, Fortinet is not aware of any *material* non-party witnesses (i.e., not Plaintiff's prosecution counsel) who are located in the E.D. Tex. or within 100 miles of Marshall, Texas.  *See*, *e.g.*, TrendMicro Joint Pretrial Order, (Dkt. No. 248-2) (identifying Balassanian as only witness for Plaintiff that is not an expert or otherwise employed by defendant); PAN's Joint Pretrial Order (Dkt. No. 291-1) (identifying Balassanian and J. Patrick O'Malley); Ex. 13 (showing Mr. O'Malley works in Portland, OR for Resolution Strategies LLP, which identifies Implicit/Belabs as a client).  This factor weighs in favor of transfer.

4.     The Remaining Private Interest Factor is Neutral

The final private interest factors are the practical problems related to the ease, expense, and expediency of trial.  These problems "include those that are rationally based on judicial economy."  *DSS Tech.*, 2014 WL 6847569, at *4.  Although this Court has experience with the Patents-in-Suit, the N.D. Cal. also has significant experience, and a compelling showing on the other transfer factors requires transfer, even if this Court is dealing with the same patents in other suits.  *See In re Verizon Bus. Network Serv. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011).

Between 2009 and 2014, Implicit and Plaintiff filed in or transferred to the N.D. Cal. 11 lawsuits against 20 companies.  *See* Section II.C.  Two of these cases were filed against F5 Networks, Inc. ("*F5*") in July 2010 and June 2014, alleging infringement of U.S. Patent Nos. 6,629,163 ("'163 Patent") and 7,711,857, and the '683 Patent.  *See Implicit Networks, Inc. v. F5 Networks, Inc.*, Case No. 3:10-cv-03365-SI ("*F5 I*"), Dkt. No. 31; *Implicit LLC v. F5 Networks, Inc.*, Case No. 3:14-cv-02856-SI ("*F5 II*"), Dkt. 1.  The '683 Patent is also at issue in this case, and the '163 Patent is the parent of the Patents-in-Suit.  In the *F5 I* case, the N.D. Cal. entered orders on both claim construction (2012 WL 669861) and summary judgment of invalidity and non-infringement (2013 WL 1007250).  In the *F5 II* case, the N.D. Cal. heard and entered a case-dispositive claim construction order on the '683 Patent.  *F5 II*, Dkt. 57 (2015 WL 2194627).  *See also* Juniper Mtn. Transfer at 1-6 (Dkt. No. 18).

Both of these cases were analyzed in this Court's prior claim construction orders.  *See, e.g.,* Trend Micro *Markman* Order, at 19 (Dkt. No. 115) ("[T]he Court agrees with the analysis in *F5 Networks II*."); PAN's *Markman* Order, at 15 n.4 (Dkt. No. 101) ("*F5 Networks I* reached the same conclusions as to the related '163 Patent."); *see also* Plaintiff's Obj. to *Markman* Order, *Implicit LLC v. Netscout*, Case No. 2:18-cv-53-JRG (Dkt. No. 117) ("Twice this Court and twice Judge Illston in the Northern District of California construed these terms from Implicit's

- 13 -

Demultiplexing Patent Family using almost identical language that Implicit proposed.").  Given the advanced stages of claim analysis in *F5 I* and *F5 II*, the N.D. Cal. is intimately familiar with many of the Patents-in-Suit and the claims, and transfer will not negatively impact judicial economy.  *See In re Eli Lilly & Co.*, 541 F. App'x 993, 994 (Fed. Cir. 2013) (transferee court had "already conducted discovery, claim construction, and ruled on motions for summary judgment involving the same family of patents").

Moreover, the fact that Plaintiff has other cases pending in E.D. Tex. is not sufficient to deny transfer to the N.D. Cal.  *See Kroy IP Holdings, LLC v. Starbucks Corp.*, 2014 WL 5343168, at *4 (E.D. Tex. Sept. 30, 2014) ("standing alone, the presence of separately filed cases cannot justify venue in this district, or defeat an otherwise compelling case for transfer."); *GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-CV-572, 2013 WL 890484 at *6 (E.D. Tex. Jan. 14, 2013) ("[t]he Court will not permit the existence of separately filed cases to sway its transfer analysis.  Otherwise, a plaintiff could manipulate venue by serially filling cases within a single district.").  Also, Juniper has moved to transfer to N.D. Cal., given prior litigation on the same products, parties, and patents, and if granted, there would be multiple related cases in N.D. Cal. *See* Section II.D.  This factor is neutral.

### C.      The "Public Factors" Weigh in Favor of Transfer

The final factors to be considered are those that go to the public interest, including: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen*, 545 F.3d at 315.

### 1.      Administrative Difficulties Flowing from Court Congestion: Neutral

The speed with which a case can come to trial and be resolved is a factor in considering

a motion to transfer. *Genentech*, 566 F.3d at 1347. However, in situations where "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of the other factors." *Id.* The most recent Federal Judicial Caseload Statistics (Ex. 14) show this factor is neutral:

|  | N.D. Cal. | E.D. Tex. |
|---|---|---|
| Median Time to Resolve a Case | 7.2 months | 7.8 months |
| Median Time to Trial | 24 months | 21 months |

2.   Local Interests:  Weigh in Favor of Transfer

This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *Genentech*, 566 F.3d at 1347. Generally, local interests that "could apply virtually to any judicial district or division in the United States," *e.g.*, sale of the accused product that is sold throughout the United States, are disregarded in favor of particularized local interests. *TS Tech,* 551 F.3d at 1321.

Here, the N.D. Cal. has a particular local interest in adjudicating this dispute because Fortinet is headquartered in that district; all of the relevant design and development activity occurred there; and most of the relevant evidence and almost all of potential witnesses are located in the N.D. Cal. *See* Section II.B, II.D. In contrast, this District does not appear to have any interest in this dispute. *See* Section II.C. Moreover, Implicit and Plaintiff have extensively litigated many of the Patents-in-Suit in the N.D. Cal. *Id.* Thus, the ease and expense of a trial in the N.D. Cal. would be less than in the E.D. Tex. Thus, this factor weighs in favor of transfer.

3.   Remaining Considerations:  Neutral

The remaining public interest factors are neutral given that federal patent law will apply to this case, any judgment would be equally enforceable in both districts.

- 15 -

Dated: June 4, 2019                    Respectfully submitted

                                       */s/ Matthew C. Gaudet*
                                       Matthew C. Gaudet (GA SBN 287789)
                                       mcgaudet@duanemorris.com
                                       David C. Dotson (GA SBN 138040)
                                       dcdotson@duanemorris.com
                                       John R. Gibson (GA SBN 454507)
                                       jrgibson@duanemorris.com
                                       Alice E. Snedeker (GA SBN 151066)
                                       aesnedeker@duanemorris.com
                                       **DUANE MORRIS LLP**
                                       1075 Peachtree NE, Suite 2000
                                       Atlanta, GA 30309
                                       Telephone: 404.253.6900
                                       Facsimile: 404.253.6901

                                       Christopher J. Tyson (VA SBN 81553)
                                       cjtyson@duanemorris.com
                                       **DUANE MORRIS LLP**
                                       505 9th Street, N.W., Suite 1000
                                       Washington, DC 20004-2166
                                       Tel: 202.776.7800
                                       Fax: 202.776.7801

                                       Patrick S. Salceda (CA SBN 247978)
                                       psalceda@duanemorris.com
                                       **DUANE MORRIS LLP**
                                       One Market Plaza
                                       Spear Tower, Suite 2200
                                       San Francisco, CA  94105
                                       Telephone: 415.957.3000
                                       Facsimile: 415.957.3001

                                       *Counsel for Defendant*
                                       FORTINET, INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on June 4, 2019.

*/s/ Matthew C. Gaudet*
Matthew C. Gaudet

## CERTIFICATE OF CONFERENCE

The undersigned herby certifies that counsel for Fortinet has complied with the meet and confer requirement in Local Rule CV-7(h).  This motion is opposed.  The personal conference required by Local Rule CV-7(h) was conducted on May 23, 2019.  No agreement could be reached.

*/s/ Matthew C. Gaudet*
Matthew C. Gaudet