fIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| IMPLICIT, LLC,<br>　　*Plaintiff*,<br><br>v.<br><br>IMPERVA, INC.<br>　　*Defendant.* | Civil Action No. 2:19-cv-00040-JRG-RSP<br>LEAD CASE<br><br><br>JURY TRIAL DEMANDED |
| v.<br><br>FORTINET, INC.<br>　　*Defendant.* | Civil Action No. 2:19-cv-00039-JRG-RSP<br>CONSOLIDATED |

### **PLAINTIFF IMPLICIT, LLC'S RESPONSE TO**
### **DEFENDANT FORTINET, INC.'S MOTION TO TRANSFER VENUE**

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY ...............................................................................1

II. FACTUAL BACKGROUND ............................................................................................2

    A. The Cases Before this Court ................................................................................2

III. THE LAW ..........................................................................................................................3

IV. ARGUMENT .....................................................................................................................4

    A. Judicial Economy Would Not Be Served By the Transfer ....................................4

    B. Ease of Access to Relevant Sources of Proof Weighs Against Transfer ................5

        1. Implicit's Voluminous Documents are Located in This District .................5

        2. Implicit's is a Texas Company with Offices in Tyler and Austin ...............6

        3. Both Parties Have a Significant Presence in This Jurisdiction ....................7

            i. Fortinet Maintains a Significant Presence in This Jurisdiction .......7

            ii. Implicit Maintains a Significant Presence in This Jurisdiction .......7

    C. Availability of Compulsory Process .......................................................................9

    D. Cost of Attendance for Willing Witnesses..............................................................9

    E. Court Congestion Weighs Against Transfer .........................................................10

    F. "Local Interest" Factor is Neutral .........................................................................10

    G. All Federal District Courts are Equally Competent at Patent Law .......................12

V. CONCLUSION................................................................................................. 12

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                   **Page**

*Alacritech Inc. v. CenturyLink, Inc.*,
    No. 2:16-CV-00693-JRG (RSP), 2017 WL 4155236
    (E.D. Tex. Sept. 19, 2017) ....................................................................................................10

*ColorQuick, L.L.C. v. Vistaprint Ltd.*,
    No. 6:09-CV-323, 2010 WL 5136050 (E.D. Tex. July 22, 2010) .....................................10

*Frederick v. Advanced Fin. Sols., Inc.*,
    558 F. Supp. 2d 699, 704 (E.D. Tex. 2007) ......................................................................11

*Implicit, LLC v. Huawei Techs. USA, Inc.*,
    6:17-CV-182-JRG................................................................................................. 2-3

*Implicit, LLC v. NetScout Systems, Inc.*,
    No. 2:18-cv-00053-JRG................................................................................................. 2-4

*Implicit, LLC v. Palo Alto Networks, Inc.*,
    No. 6:17-CV-00336-JRG, 2018 WL 1942411 (E.D. Tex. Feb. 20, 2018) .............. 1, 3, 8-9

*Implicit Networks, Inc. v. TrendMicro*,
    No. 6:16-cv-80-JRG................................................................................................. 1-4

*In re EMC Corp.*,
    501 Fed. Appx. 973 (Fed. Cir. 2013) ...................................................................................3

*Innovative Display Techs. LLC v. BMW of N. Am., LLC*, No. 2:14-CV-00106-JRG, 2015 WL
    1459188 (E.D. Tex. Mar. 31, 2015) ....................................................................................9

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*,
    No. CIV.A. 6:08-CV-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ........................10

*Mears Techs., Inc. v. Finisar Corp.*,
    No. 2:13-CV-376-JRG, 2014 WL 1652603 (E.D. Tex. Apr. 24, 2014) ..............................6

*NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*,
    2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) ......................................................................8

*Phoenix Licensing, L.L.C. v. Gen. Motors, LLC*,
    No. 2:13-CV-1093-JRG-RSP, 2015 WL 1431906 (E.D. Tex. Mar. 30, 2015) ............... 4-5

*Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*,

    No. 6:17-CV-00549-JRG, 2018 WL 4444097 (E.D. Tex. Sept. 5, 2018) .........................11

*Realtime Data, LLC v. Hewlett Packard Enter. Co.*,
    No. 6:16-CV-00086-RWS(JDL), 2017 WL 3709095 (E.D. Tex. Feb. 3, 2017) ...............12

*Uniloc USA Inc. v. Box, Inc.*,
    No. 1:17-CV-754-LY, 2018 WL 2729202 (W.D. Tex. June 6, 2018).........................11, 12

*Uniloc USA, Inc. v. Distinctive Dev. Ltd.,*
    964 F. Supp. 2d 638 (E.D. Tex. 2013)................................................................................6

**Statutes**

§ 1404(a) ................................................................................................................... *passim*

I.       **INTRODUCTION AND SUMMARY.**

In two prior Implicit cases filed in this district, Defendants moved to transfer the cases to the Northern District of California. *See Implicit, LLC v. Palo Alto Networks, Inc*., No. 6:17-CV-00336-JRG, 2018 WL 1942411 (E.D. Tex. Feb. 20, 2018) & *Implicit Networks, Inc. v. Trend Micro,* No. 6:16-cv-80-JRG. After a careful balancing of the competing interests and the *Volkswagen* factors, this Court denied both motions.

Appreciating this record, Fortinet, Inc. ("Fortinet") argues that this case is different.

But Fortinet's premise is borne of compounded misstatements of law. Multiple times across its motion, Fortinet reframes the issues and departs from the case law. For example, the proper basis for the "sources of proof" analysis factor is the physical location of the evidence, not whether the parties know "how to transport [their] documents" to another venue. *See* Fortinet Br. at 10. Similarly, the inquiry is whether it is currently "clearly more convenient" for the parties to litigate in the transfer forum, not whether Implicit was, years ago, merely "**able** to litigate cases in the N.D. Cal." *Compare Implicit, LLC v. Palo Alto Networks, Inc*., 2018 WL 1942411, at \*1 *with* Fortinet Br. at 11 (emphasis added).

Judicial economy weighs heavily against transfer—this very Court has gained substantial experience in Implicit's patents and technology over the last two years. The traditional private interest factors also do not warrant transfer. Implicit has a significant presence in this district. As this Court has previously recognized, Implicit's offices and records are here. *See* below, § IV.B.1-2. Fortinet also has a significant presence in this district, with a Texas office located in Plano. More, Fortinet is actively recruiting personnel in both Plano and the Dallas/Fort Worth area. In short, both parties have a significant presence in this district and in Texas.

Finally, most of the third-party witnesses essential to Fortinet's inevitable validity attack do not reside in the Northern District of California. They rather reside in Arizona, New Jersey, and elsewhere. *See* Declaration of Francesca Germinario ("Germinario Dec."), ¶ 4.

Based on all these factors, and considering which Court has the relevant and recent experience, Implicit respectfully requests that Fortinet's Motion to Transfer be denied.

## II.  FACTUAL BACKGROUND.

### A. The Cases Before this Court.

Implicit asserts nine patents against Fortinet: Patent Nos. 8,056,075 (the "'075 Patent"); 8,856,779 (the "'779 Patent"); 9,325,740 (the "'740 Patent"); 8,694,683 ("'683 Patent"); 9,270,790 (the "'790 Patent"); 9,591,104 (the "'104 Patent"); 10,027,780 (the "'780 Patent"); 10,033,839 (the "'839 Patent"); and 10,225,378 (the "'378 Patent") (collectively, the "Asserted Patents"). Implicit has filed 20 separate cases in this district—starting in February 2016—alleging infringement of the Asserted Patents. *See* Germinario, Ex. 18.[1]

This Court has recent, substantive experience with each Asserted Patent. *See Implicit, LLC v. Juniper Networks, Inc.*, No. 2:19-cv-00037-JRG-RSP, ECF No. 29 (Opp. to Juniper Motion to Transfer Venue) at 7. Specifically, *Implicit, LLC v. TrendMicro*, No. 6:16-cv-80-JRG ("TrendMicro") and *Implicit, LLC v. Huawei Techs. USA, Inc.,* No. 6:17-CV-182-JRG ("*PAN*")[2] were before this Court, and *Implicit, LLC v. NetScout Systems, Inc.*, No. 2:18-cv-00053-JRG is currently pending before this Court. Additionally, the Court recently consolidated several cases

---

[1] All reference to "Ex." henceforth shall be to Exhibits to the Germinario Dec. unless otherwise indicated.

[2] Palo Alto Networks ("PAN")'s separate case was later consolidated with *Implicit, LLC v. Huawei Techs. USA, Inc.*.

with lead case *Implicit, LLC v. Imperva, Inc.,* 2:19-cv-00040-JRG-RSP. All of these cases are currently pending in this Court.

In *TrendMicro*, Implicit asserted the '779 Patent; '685 Patent; '740 Patent; '790 Patent; and '683 Patent in litigation lasting 22 months. The Court there issued a lengthy claim construction order in March 2017, construing eleven terms from five patents (four of which are Asserted Patents in this case). *See generally Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-CV-80-JRG, 2017 WL 1190373 (E.D. Tex. Mar. 29, 2017). The Court held a pretrial conference on September 21, 2017, and decided several motions to strike testimony in October 2017. *See* Ex. 19 at ECF Nos. 150, 159, 164, 231, 232, 249, and 253. The case settled shortly before trial.

The Court presided over the *PAN* matter through the pretrial conference, before the case was settled. The Court issued a claim construction order in March 2018. *See Implicit, LLC v. Huawei Techs. USA, Inc.,* No. 6:17-CV-182-JRG, 2018 WL 1169137, at *2 (E.D. Tex. Mar. 6, 2018)*.

In the consolidated *NetScout* and *Sandvine* cases, the Court issued a claim construction order as recently as April 15, 2019, construing 29 claims across three patents: Claims 1, 2, 4, 5, 8, 9, 10 and 24 of the '683 Patent; Claims 1, 3, 4, 5, 8, 10, 12, 15, 17, and 18 of the '790 Patent; and Claims 1, 3, 5, 10, 12, 13, and 16 of the '104 Patent. *See Implicit, LLC v. NetScout Sys., Inc.,* No. 2:18-CV-53-JRG, 2019 WL 1614725, at *5 (E.D. Tex. Apr. 15, 2019).

### III. <u>THE LAW</u>.

The purpose of a motion to transfer venue under Section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Implicit, LLC v. Palo Alto Networks, Inc.,* No. 6:17-CV-00336-JRG, 2018 WL 1942411, at *1 (E.D. Tex. Feb. 20, 2018). The relevant time for the Court to

consider is "the situation which existed when suit was instituted." *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013). "While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. In order to support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff. Absent such a showing, the plaintiff's choice is to be respected." *Id.* at *2 (internal citations omitted).

## IV.  ARGUMENT.

This motion does not come before the Court in 2013, or even 2017, but rather now—in 2019. Implicit has chosen this forum because it is currently convenient for Implicit's witnesses, convenient for discovery, and judicially efficient. Implicit's choice of forum **must** be honored unless Fortinet can present evidence demonstrating another forum is "clearly more convenient" **now,** for the purposes of **this** litigation. Fortinet's arguments—premised on stale facts—are unpersuasive.

### A.  Judicial Economy Would Not Be Served By the Transfer.

Keeping this case in this Court would serve judicial economy because this Court has significant, recent familiarity with Implicit's technology and the Asserted Patents, and so this factor weighs strongly against transfer to N.D. Cal.

This Court has significant recent experience with the Asserted Patents. *See* § II.A, above; *see also Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-CV-80-JRG, 2017 WL 1190373, at *3 (E.D. Tex. Mar. 29, 2017); *Implicit, LLC v. NetScout Sys., Inc.,* No. 2:18-CV-53-JRG, 2019 WL 1614725, at *5 (E.D. Tex. Apr. 15, 2019) (this Court construing Implicit's Asserted Patents in

other cases). *Implicit, LLC v. NetScout Systems, Inc.*, No. 2:18-cv-00053-JRG is currently pending before this Court.

Given the Court's familiarity with the patents and technology at hand, transfer would cause another district judge to duplicate the effort already expended by this Court. *See Phoenix Licensing, L.L.C. v. Gen. Motors, LLC*, No. 2:13-CV-1093-JRG-RSP, 2015 WL 1431906, at *4 (E.D. Tex. Mar. 30, 2015) ("Phoenix additionally cites to thirteen past patent infringement suits involving patents that overlap with the related, consolidated cases, some of which claim construction has been completed. …[T]he Court finds the factor weighs against transfer. As Phoenix correctly notes, the previously filed lawsuits involve an overlap of issues in fact and law such that judicial economy would not be best served through transfer.")

## B. Ease of Access to Relevant Sources of Proof Weighs Against Transfer.

### 1. Implicit's Voluminous Documents are Located in This District

Usually, infringers are presumed the source of the bulk of the evidence produced in patent litigation, and Fortinet emphasizes the evidence available to it in N.D. Cal.  However, Implicit anticipates producing a significant quantity of documents in this litigation, *see* Germinario Dec., ¶ 3, the vast majority of which is located at Implicit's office in this district.[3] *See* Balassanian Dec., ¶ 8.  In prior litigation in this district, Implicit produced over 154,000 pages of hard copy documents, hundreds of pages of source code, and over 95,000 multi-page native files, all easily totaling at least hundreds of thousands, if not millions, of pages.  *See* Germinario Dec., ¶ 3.

---

[3] As noted in Balassanian Dec., ¶ 2, the facts supporting this Opposition are accurate as of the date this case was filed.

It is unclear whether and how this amount of evidence is comparable to the "large volume" of Fortinet documents purportedly located in Sunnyvale, CA, or some amount of "[a]dditional documents and source code" allegedly stored in Burnaby, Canada (which is not N.D. Cal). In failing to provide more specific figures, Fortinet effectively asks the Court to speculate as to the "source of proof" factor. This is improper. *See Mears Techs., Inc. v. Finisar Corp.,* No. 2:13-CV-376-JRG, 2014 WL 1652603, at *2 (E.D. Tex. Apr. 24, 2014) ("[T]he sources of proof are scattered across the United States and abroad. Finisar has failed to identify with any real particularity which locations will provide the actual sources of proof in this case."); *cf. Frederick v. Advanced Fin. Sols., Inc.,* 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007).

Further, to the extent any relevant Fortinet documents are located in Burnaby, Canada, the presence of documents in yet another disparate location does not weigh in favor of transfer. *See Uniloc USA, Inc. v. Distinctive Dev. Ltd.,* 964 F. Supp. 2d 638, 646 (E.D. Tex. 2013). "[D]isruption to Fortinet employees, " would not be "minimize[d]" by venue transfer to California (*see* Cooper Dec., ¶ 14); any documents stored in Canada will travel a great distance no matter the result of this motion to transfer.

## 2. Implicit's is a Texas Company with Offices in Tyler and Austin

Fortinet spills much ink arguing that Implicit has taken inconsistent positions on its corporate citizenship over the past several years. *See* Fortinet Br. at 4-6. Not so. Implicit has simply moved from Washington to Texas. People move. So do companies.

Implicit, LLC was formed in the state of Washington in 2013. *See* Balassanian Dec., ¶ 5 & Fortinet Exs. 2 & 3 (2013 documents referencing Implicit's incorporation and business address in Washington). Thereafter, as noted by Fortinet's Motion at 11, Implicit was registered as a Texas entity in 2017, with its principal place of business in Austin, Texas. *See* Ex. 20.

(showing Implicit's principal place of business is in Austin, TX) & Balassanian Dec, ¶ 5.  The present Washington mailing address is a drop box for remaining mail.  *See* Balassanian Dec., ¶ 6.  Implicit currently neither owns nor rents any real estate in the State of Washington, *id.* at ¶ 6, and no relevant Implicit documents are located in Washington. *Id.* at ¶ 8.

Implicit maintains an office in Tyler, Texas (within this district).[4]  *See* Balassanian Dec., ¶ 5.  Substantially all of Implicit's hard copy and original documents relevant to this litigation are located at Implicit's Tyler office.  Additional documents and electronic copies are located at its trial counsel's offices in Austin, Dallas, or Longview, Texas. *See id.* at ¶¶ 7-8.

### 3. Both Parties Have a Significant Presence in This Jurisdiction

#### i. Fortinet Maintains a Significant Presence in This Jurisdiction

Despite its arguments otherwise, Fortinet clearly maintains a significant presence in Texas, particularly in Plano.  Fortinet's "Global Offices" webpage lists only five U.S offices—one of which is located in Plano, Texas.  *See* Ex. 21.  Fortinet claims no "technical work relating to the accused products is located" in Texas.  Fortinet Br. at 4.  However, a simple internet search reveals over 130 Fortinet employees who claim to work in Plano or Dallas.  *See* Exs. 22-23.  Numerous employees in Plano and the Dallas/Fort Worth area—including a Senior Systems Engineer and Vice President of Advanced Services—have expertise in systems engineering and network engineering. Exs. 24-25.

More, Fortinet is actively recruiting engineers in its Plano office. *See* Exs. 26 & 27 (multiple job postings for engineers in Fortinet's Plano and Dallas offices). The job descriptions note the roles are "very technical, and highly visible" and require "[c]ollection and analysis of

---

[4] Which is hardly any less of a corporate office simply because Implicit has not rented out the entire building. *Cf.* Fortinet Br. at 9.

packet trace information" and "strong network security and routing experience"—topics relevant to the Asserted Patents. *See* Ex. 27.

### ii. Implicit Maintains a Significant Presence in This Jurisdiction

Fortinet's argument that Implicit's sources of proof are inadequate purely because Implicit has not been a Texas entity for a sufficient time period defies any basis in law or fact. *See* Fortinet Br. at 9-10. Implicit has been a registered Texas entity for almost two years. *See* Ex. 20 & Balassanian Dec., ¶ 5.

Implicit's office is not merely a "nascent Tyler connection." Fortinet Br. at 2. The Court previously found that the length of time Implicit had been registered as a Texas entity (then, only a few months) was no basis to conclude that its principal place of business was not properly in Texas. *See Implicit, LLC v. Palo Alto Networks, Inc.,* No. 6:17-CV-00336-JRG, 2018 WL 1942411, at *3 (E.D. Tex. Feb. 20, 2018) (citing *NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010)) ("[P]laintiff formed four months before filing suit, was organized under Texas law, and had its principal place of business in the EDTX, formation four months before complaint was filed not 'recent' under Federal Circuit precedent"). The Court determined, "Implicit maintains its corporate and other records in Texas and maintains its principle place of business in Texas. ... Accordingly, Implicit's Texas location is a factor that must be considered in the venue transfer analysis." *See Implicit, LLC v. Palo Alto Networks, Inc.,* 2018 WL 1942411, at *3.[5]

---

[5] Fortinet contends that the "complete record" of Implicit's corporate registration has never been before the Court and that now, the Court may find otherwise. *See* Fortinet at 7. However, the case law is well-settled that circumstances must be evaluated at the time of filing—not, for example, several years prior.

Fortinet also makes much of a 2017 joint motion to transfer venue from Washington to California in *Implicit Networks, Inc. v. International Business Machines Corp., et al.*, No. C08-01080-RAJ (W.D. Washington). *See* Fortinet Ex. 5. What Fortinet fails to acknowledge is that a mutual agreement between Implicit and IBM to transfer a case several years ago does not affect the posture and convenience of Implicit's corporate organization today. *Compare* Fortinet Ex. 5 at 10:8-9 (deeming N.D. Cal a "reasonably convenient venue for Implicit" in an earlier case) *with Implicit, LLC v. Palo Alto Networks, Inc.*, No. 6:17-CV-00336-JRG, 2018 WL 1942411, at *1-2 (E.D. Tex. Feb. 20, 2018) (standard for transfer is "clearly more convenient" at time of filing).

As of the time this case was filed, Implicit's evidence was (and continues to be) sourced from its office in Tyler and its trial counsel's offices in Austin, Dallas and Longview. This factor is therefore at least neutral to transfer, if not weighted against transfer.

C. **Availability of Compulsory Process**.

On balance, third-party witnesses relevant to this case are not located exclusively in either the proposed transferee or transferor districts, so the availability of compulsory process factor is neutral.

The potential third-party witnesses are both numerous and dispersed. Implicit's current and former patent prosecution attorneys are located in Austin, Houston, or Seattle. *See* Balassanian Dec., ¶ 7. Third-party witnesses relevant to the validity of the Asserted Patents (recently deposed in Implicit's pending *NetScout* litigation) reside in locations across the country: David Wolf, in Seattle, WA; Larry Peterson in Tucson, AZ and Princeton, NJ; David Mosberger in Boulder, CO; Garth Novak in Seattle, WA; Robert Roth in Seattle, WA; John

Hartman in Tucson, AZ; Dan Decasper in San Jose, CA; and Marc Fiuczynski in Trenton, NJ. *See* Germinario Dec., ¶ 4.

### D. Cost of Attendance for Willing Witnesses.

The next factor considers the cost of the litigation to willing witnesses. The "convenience of party witnesses is given less weight" than the convenience of third-party witnesses, and as established in § IV.B.2, numerous relevant third-party witnesses reside in neither the transferee nor transferor districts. *See Implicit, LLC v. Palo Alto Networks, Inc.*, 2018 WL 1942411, at *5; *cf. Innovative Display Techs. LLC v. BMW of N. Am., LLC,* No. 2:14-CV-00106-JRG, 2015 WL 1459188, at *4 (E.D. Tex. Mar. 31, 2015).

Fortinet uses the declaration of its in-house litigation counsel to paint "[n]umerous Fortinet employees" in broad strokes. *See e.g*, Cooper Dec., ¶¶ 6, 7 & 9. As a company with more than 6,000 employees and over 600 patents to its name, it is understandable (but irrelevant to this venue inquiry) that some employees working in development-related departments reside in California. *Compare* Cooper Dec., ¶¶ 6, 7 & 9 *with* Ex. 28. Scores of Fortinet employees are also employed at its other offices across the country (one of which is in this District). Yet, as to the accused technology, Fortinet fails to furnish details for even one relevant employee. Which relevant witnesses does Fortinet contend will be burdened by travel for this case? Where do they reside? What role will they play in this case? Fortinet has provided no answers here.

Instead, Fortinet asks the court to speculate as to the extent of the burden on faceless legions of employees who may or may not be called upon during the course of this litigation. This is an inadequate basis for transfer. *See ColorQuick, L.L.C. v. Vistaprint Ltd.*, No. 6:09-CV-323, 2010 WL 5136050, at *6 (E.D. Tex. July 22, 2010) ("Defendants' vague allusions to third-party witnesses are insufficient for this factor to weigh significantly in favor of transfer."); *cf.*

*Frederick v. Advanced Fin. Sols., Inc.,* 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007) ("The movant must "specifically identify key [nonparty] witnesses and outline the substance of their testimony.' General allegations of inconvenience are insufficient.") (citations omitted).

### E.   Court Congestion Weighs Against Transfer.

According to statistical sources the Court has used in other cases, the Eastern District of Texas ("E.D. Tex") suffers far less court congestion than N.D. Cal.  *See Alacritech Inc. v. CenturyLink, Inc.,* No. 2:16-CV-00693-JRG (RSP), 2017 WL 4155236, at \*6 (E.D. Tex. Sept. 19, 2017).  The December 2018 Federal Court Management Statistics evidences a median time from filing to trial for civil cases in E.D. Tex of 19 months; whereas the time to trial in N.D. Cal is 29.2 months.  *See* Ex. 29.  "Because this factor is primarily concerned about speed to trial (as opposed to judges' workloads), this factor weighs against transfer." *Alacritech Inc.,* 2017 WL 4155236*,* at \*6 (E.D. Tex. Sept. 19, 2017).

### F.   "Local Interest" Factor is Neutral.

This district has "routinely rejected" suggestions that a "specific locality has a dominant interest in resolving the issue of [patent infringement]" when a "company sells allegedly infringing products, or offers allegedly infringing services, nationwide." *J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc*., No. CIV.A. 6:08-CV-211, 2008 WL 5378010, at \*6 (E.D. Tex. Dec. 23, 2008). Defendant has presented no facts to refute the nationwide impact of its infringement. Plaintiff therefore contends that this factor is inapplicable.

To the extent the Court considers this factor, Plaintiff's only offices are located in Austin and Tyler, and therefore Plaintiff's local interest is served by remaining in this district. *See Uniloc USA Inc. v. Box, Inc.,* No. 1:17-CV-754-LY, 2018 WL 2729202, at \*4 (W.D. Tex. June 6, 2018) ("…Box has an office in Texas, and Texas 'has a significant interest in preventing patent

infringement within its borders and in protecting the patent rights of its citizens.'"); *see also Phoenix Licensing, L.L.C. v. Gen. Motors, LLC*, No. 2:13-CV-1093-JRG-RSP, 2015 WL 1431906, at *5 (E.D. Tex. Mar. 30, 2015) ("GM's reputation-based arguments as to the Eastern District of Michigan are belied by its strong nationwide presence and its significant ties to Texas. *See, e.g.*, (Wang Decl. at ¶ 9) (marshalling significant evidence of GM's operational- and advertising-based activities within Texas, and specifically, evidence of GM's activities within the Eastern District of Texas). Indeed, with such a strong presence within this and other Texas districts, the impact of this suit on GM would equally apply to this District as well").

Even assuming Fortinet has a local interest in N.D. Cal, this factor should, at most, be neutral. *See Uniloc,* 2018 WL 2729202, at *4 ("But both Texas and California have an interest in preventing patent infringement, and Texas and California also have an interest in preventing violations of the law by corporations headquartered within their borders. On balance, this factor is neutral.")

However, Fortinet maintains a significant presence in Plano (one of only five U.S. offices listed on its website), *see* Ex. 21 & § IV.B.3.i, above.  Consequently, both parties' local interests are best served in this district, and this factor weighs against transfer. *Cf. Realtime Adaptive Streaming LLC v. Amazon.com, Inc*., No. 6:17-CV-00549-JRG, 2018 WL 4444097, at *8 (E.D. Tex. Sept. 5, 2018) ("While Amazon asserts that [its local] facilities did not provide a local interest on the basis that they are related to national sales and do not use the asserted technology; nevertheless, Amazon affords itself of the laws and protections provided by this District.")

G. <u>**All Federal District Courts are Equally Competent at Patent Law**</u>.

This district has repeatedly held that the public factors relating to familiarity with the law and conflicts of law are neutral in most patent infringement cases. *See Realtime Data, LLC v.*

*Hewlett Packard Enter. Co.*, No. 6:16-CV-00086-RWS(JDL), 2017 WL 3709095, at *9 (E.D. Tex. Feb. 3, 2017) ("With respect to the third and fourth factors, both courts are familiar with federal patent law and there are no conflicts of laws questions to avoid.").

V.   **CONCLUSION.**

For the reasons set forth above, Implicit respectfully requests that this Court deny Fortinet's Motion to Transfer Venue.

| | |
|---|---|
| **Dated July 2, 2019** | Respectfully submitted, |
| | */s/ Francesca Miki Shima Germinario* |
| | Spencer Hosie, *pro hac vice*, |
| | CA State Bar No. 101777 |
| | Brandon C. Martin, *pro hac vice*, |
| | CA State Bar No. 269624 |
| | Darrell Rae Atkinson, *pro hac vice,* |
| | CA State Bar No. 280564 |
| | Francesca M. S. Germinario, *pro hac vice,* |
| | CA State Bar No. 326208 |
| | **HOSIE RICE LLP** |
| | 600 Montgomery St., 34th Floor |
| | San Francisco, CA 94111 |
| | 415.247.6000 |
| | Fax: 415.247.6001 |
| | shosie@hosielaw.com |
| | bmartin@hosielaw.com |
| | datkinson@hosielaw.com |
| | fgerminario@hosielaw.com |
| | |
| | William E. Davis, III |
| | Texas State Bar No. 24047416 |
| | Christian J. Hurt |
| | Texas State Bar No. 24059987 |
| | Edward Chin (Of Counsel) |
| | Texas State Bar No. 50511688 |
| | Debra Coleman (Of Counsel) |
| | Texas State Bar No. 24059595 |
| | **THE DAVIS FIRM, PC** |
| | 213 N. Fredonia Street, Suite 230 |
| | Longview, Texas 75601 |
| | Telephone: (903) 230-9090 |
| | Facsimile: (903) 230-9661 |

>bdavis@bdavisfirm.com
>churt@bdavisfirm.com
>echin@bdavisfirm.com
>dcoleman@bdavisfirm.com
>
>*Counsel for Plaintiff Implicit, LLC*

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this July 2, 2019, on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

>*/s/ Francesca Miki Shima Germinario*
>Francesca Miki Shima Germinario